IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ANDREW S. K.,[1]                              3:20-cv-01417-BR

          Plaintiff,                          OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.


**LISA R.J. PORTER**
Johnston Porter Law Office, P.C.
5200 Meadows Rd., Ste. 150
Lake Oswego, OR  97035
(503) 245-6309

          Attorneys for Plaintiff

**SCOTT ERIK ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

────────────────────

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JOSEPH J. LANGKAMER**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2212

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Andrew S. K. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

### I.   Prior Administrative Proceedings

On November 16, 2015, Plaintiff protectively filed his

application for SSI benefits.  Tr. 22, 64.[2]  Plaintiff alleged a disability onset date of March 1, 2013.  Tr. 22, 64.  Plaintiff's application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 23, 2017.  Tr. 64.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff was represented by an attorney at the hearing.

On January 29, 2018, the ALJ issued an opinion in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits from March 1, 2013, through January 29, 2018.  Tr. 64-74.

The record does not reflect and the parties do not indicate whether Plaintiff requested review of this decision by the Appeals Council.  The current ALJ, however, states Plaintiff did not appeal this decision.  Tr. 22.

## II.  Current Administrative Proceedings

On February 8, 2018, Plaintiff protectively filed another application for SSI benefits.  Tr. 22, 206.  Plaintiff alleged a disability onset date of November 1, 2016.  Tr. 22, 206.

---

[2] Citations to the official Transcript of Record (#10) filed by the Commissioner on January 14, 2021, are referred to as "Tr."

Plaintiff's application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 26, 2019. Tr. 22, 40-58. At the hearing Plaintiff amended his alleged disability onset date to February 8, 2018. Tr. 22, 42-43. Plaintiff and a vocational expert (VE) testified at the hearing. Plaintiff was represented by an attorney at the hearing.

On September 9, 2019, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 22-35. Plaintiff requested review by the Appeals Council. On July 1, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner. Tr. 1-4. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On August 19, 2020, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on September 23, 1989. Tr. 33, 206. Plaintiff was 28 years old on February 8, 2018, his amended alleged disability onset date. Tr. 33. Plaintiff has at least a high-school education. Tr. 34. Plaintiff has past relevant

work experience as a locker-room attendant.  Tr. 33.

Plaintiff alleges disability due to Trichorphinophalangeal Syndrome (TRPS) Type 1 and 2 (a condition that, among other things, causes bone and joint malformations) and depression. Tr. 108-09.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 25-33.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,*

276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d

1047, 1051 (9th Cir. 2012). The court may not substitute its

judgment for that of the Commissioner. *Widmark v. Barnhart*, 454

F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the

Commissioner determines the claimant is engaged in substantial

gainful activity (SGA). 20 C.F.R. § 416.920(a)(4)(i). *See also*

*Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.

2011).

At Step Two the claimant is not disabled if the

Commissioner determines the claimant does not have any medically

severe impairment or combination of impairments. 20 C.F.R.

§ 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity. 20 C.F.R.

§ 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The

criteria for the listed impairments, known as Listings, are

enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed

Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the

national economy that the claimant can perform.  *Lockwood v.*
*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony
of a VE or by reference to the Medical-Vocational Guidelines (or
the grids) set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since February 8, 2018, his amended
alleged disability onset date.  Tr. 25.

At Step Two the ALJ found Plaintiff has the severe
impairments of bilateral pes planovalgus (flat feet), skew foot
deformities, bilateral ankle degenerative-joint disease, TRPS
Type 1, obesity, bilateral hip dysplasia, and tarsal-tunnel
syndrome.  Tr. 25.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 27.  The ALJ found Plaintiff has the RFC to
perform light work with the following limitations:  can only

occasionally lift and carry up to 20 pounds; can frequently lift
and carry up to ten pounds; can only sit for up to six hours in
an eight-hour workday with normal breaks; can only stand and/or
walk for two hours in an eight-hour workday with normal breaks;
needs to alternate positions between sitting and/or standing
every 30 minutes; requires a cane to walk "as needed"; can
frequently handle and finger bilaterally; can only occasionally
climb stairs or ramps; cannot climb ladders, ropes, or
scaffolds; can frequently balance; can only occasionally stoop,
kneel, or crouch; cannot crawl; and must avoid workplace hazards
such as unprotected heights and heavy machinery.  Tr. 27-28.

At Step Four the ALJ concluded Plaintiff is unable to
perform his past relevant work.  Tr. 33.

At Step Five the ALJ found Plaintiff can perform other jobs
that exist in the national economy such as charge-account clerk,
document-preparer, and escort-vehicle driver.  Tr. 34.
Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 34.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to
find Plaintiff meets Listing 1.02 regarding major dysfunction of
a joint at Step Three; (2) applied *res judicata* to the previous

ALJ's decision in January 2018; (3) failed to provide legally

sufficient reasons for discounting Plaintiff's symptom

testimony; (4)failed to provide legally sufficient reasons for

discounting the opinion of James Meeker, M.D., a treating

physician; and (5) failed to include all of Plaintiff's

limitations in her assessment of Plaintiff's RFC.

**I.     The ALJ did not err when she found Plaintiff did not meet
        the requirements of Listing 1.02 at Step Three.**

Plaintiff contends the ALJ erred by finding Plaintiff's

foot impairment does not meet the requirements of Listing 1.02

for major dysfunction of a joint.

**A.     Standards**

As noted, at Step Three the claimant is disabled if

the Commissioner determines the claimant's impairments meet or

equal one of the listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

*See also Keyser v. Comm. Social Sec. Admin*, 648 F.3d 721, 724

(9th Cir. 2011).  Step Three "streamlines the decision process

by identifying those claimants whose medical impairments are so

severe that it is likely they would be found disabled regardless

of their vocational background."  *Bown v. Yuckert*, 482 U.S. 137,

153 (1987).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  To *equal* a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)(emphasis in original).  *See also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2014).

When determining whether a claimant equals a Listing at Step Three, the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of the impairments."  *Macia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  *See also Murphy v. Comm'r Social Sec. Admin.*, 423 F. App'x 703, 704 (9th Cir. 2011).

B.  **Analysis**

To satisfy Listing 1.02 for major dysfunction of a joint there must be evidence to show "gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable

imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)" with the "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. The "inability to ambulate effectively" means "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at § 1.00(B)(2)(b)(1). Ineffective ambulation is defined generally as having "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.00(B)(2)(b). A person cannot effectively ambulate if he needs a walker, two crutches, or two canes to walk; is unable to walk one block at a reasonable pace on rough or uneven surface; cannot use standard public transportation; cannot carry out routine ambulatory activities such as shopping; or is unable to climb a few steps at a reasonable pace without using a single handrail. *Id.* at § 1.00(B)(2)(b)(2).

The ALJ concluded although Plaintiff's severe impairments "both singly and in combination may cause some

limitations," the limitations do not meet the requirements of
Listing 1.02 on the grounds that "the records show [Plaintiff]
is able to ambulate effectively and is able to perform some fine
and gross movements effectively with his upper extremities."
Tr. 27. For example, the ALJ noted in July 2018 Plaintiff
demonstrated increased activity tolerance during physical
therapy exercises and showed improved active range of motion of
his right ankle and improved bilateral lower extremity strength.
Tr. 30, 481. In October 2018 Plaintiff reported he was
independent in his activities of daily living even though he
used a cane. Tr. 547. In March 2019 during a consultation
regarding possible hip surgery, Plaintiff reported he was able
to walk up to two blocks before experiencing any symptoms.
Tr. 630. Plaintiff also indicated in his Adult Function Report
and testified at the hearing that he uses only a cane to walk.
Tr. 47, 254, 262.

        The Court concludes on this record Plaintiff failed to
show that he meets each required characteristic of the
impairment in Listing 1.02 or to establish that his symptoms,
signs, and laboratory findings are at least equal in severity
and duration to the required characteristics of Listing 1.02.
The Court, therefore, concludes the ALJ adequately explained at

Step Three his evaluation of Plaintiff as to Listing 1.02.

**II.  The ALJ did not apply the principle of *res judicata* based on the previous ALJ's nondisability determination.**

Plaintiff contends the ALJ erred when she concluded Plaintiff is disabled by applying *res judicata* based on the previous ALJ's nondisability determination.

The Commissioner asserts the ALJ did not apply *res judicata* based on the previous ALJ's nondisability determination, and, in any event, such an error would be harmless even if she did apply *res judicata*.

**A.  Standards**

The Social Security Act provides "[t]he findings and decisions of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing."  42 U.S.C. § 405(h).  In *Chavez v. Bowen* the Ninth Circuit observed "the principles of *res judicata* apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."  844 F.2d 691, 693 (1988).  *See also Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009).

Social Security Regulations also provide the "doctrine of *res judicata* applies in that we have made a previous determination or decision . . . about your rights on the same

fact and on the same issues or issues, and this previous

determination or decision has become final." 20 C.F.R.

§ 404.957(c)(1). "Adjudicators must adopt such a finding from

the final decision on the prior claim in determining whether the

claimant is disabled with respect to the unadjudicated period

unless there is new and material evidence relating to such a

finding or there has been a change in the law, regulations or

rulings affecting the finding or the method for arriving at the

finding." Acquiescence Ruling (AR), 97-49(9)(Dec. 3, 1997),

1997 WL 742758, at *3. In other words, a claimant may rebut the

presumption by showing a "changed circumstance" affecting the

issue of disability such as an increase in the severity of the

claimant's impairments, the existence of an impairment not

considered in the previous application, or a change in the

claimant's age category.

### B. Analysis

As noted, Plaintiff filed a prior application for SSI

benefits on November 16, 2015, and alleged a disability onset

date of March 1, 2013. Tr. 22. On January 29, 2018, the

previous ALJ concluded Plaintiff was not disabled. In February

2018 Plaintiff filed his current application for SSI benefits

instead of appealing the previous ALJ's January 2018 opinion.

The current ALJ acknowledged Plaintiff's prior claim, outlined

the standards for adjudicating a subsequent claim involving an

unadjudicated period, and concluded:

> In this case, the [Plaintiff] has shown changed
> circumstances as the Agency has issued new rules
> regarding how to analyze medical evidence and the
> [Plaintiff] has some newly diagnosed conditions.
> However, [I have] given the prior ALJ findings
> the appropriate deference and for reasons
> detailed in this decision find the evidence does
> not warrant a change in [Plaintiff's] residual
> functional capacity as previously determined.

Tr. 23.

The current ALJ acknowledged Plaintiff's "changed

circumstances," but based on her evaluation of all of the

evidence in the record the current ALJ concluded an RFC that was

different from the RFC determined by the previous ALJ was not

warranted.  Accordingly, the ALJ did not, in fact, merely apply

the previous ALJ's determination of nondisability to Plaintiff's

current claim.

Even if the ALJ had erroneously relied on the previous

ALJ's determination of disability, any error would have been

harmless.  In *Ahearn v. Saul* the Ninth Circuit held even though

the ALJ erred in applying a presumption of nondisability, the

error was harmless inasmuch as the ALJ "performed an independent

evaluation of the evidence in the record."  988 F.3d 1111, 1118

(9th Cir. 2021).

Here, as noted, the ALJ found changed circumstances and, as a result, performed an independent evaluation of all of the evidence in the record when she evaluated Plaintiff's RFC. The Court, therefore, concludes on this record that the ALJ did not apply any presumption of nondisability. Even if she had applied such a presumption, however, any error would have been harmless because she performed her own evaluation of the record.

## III. The ALJ provided legally sufficient reasons for discounting Plaintiff's testimony.

Plaintiff contends the ALJ erred when she failed to provide legally sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony.

### A. Standards

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The

claimant need not show her "impairment could reasonably be
expected to cause the severity of the symptom she has alleged;
she need only show that it could reasonably have caused some
degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting
*Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A
claimant is not required to produce "objective medical evidence
of the pain or fatigue itself, or the severity thereof."
*Garrison*, 759 F.3d at 1014.

   If the claimant satisfies the first step of this
analysis and there is not any affirmative evidence of
malingering, "the ALJ can reject the claimant's testimony about
the severity of her symptoms only by offering specific, clear
and convincing reasons for doing so." *Garrison*, 759 F.3d at
1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,
883 (9th Cir. 2006)(same).  General assertions that the
claimant's testimony is not credible are insufficient.  *Parra v.
Astrue,* 481 F.3d 742, 750 (9th Cir. 2007).  The ALJ must
identify "what testimony is not credible and what evidence
undermines the claimant's complaints." *Id*. (quoting *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

   **B.   Analysis**

   On April 3, 2018, Plaintiff completed an Adult

Function Report.  Tr. 248-55.  Plaintiff reported he experiences substantial pain in his hips, feet, hands, and knees as a result of his rare genetic disorder.  Plaintiff stated he spends most of the day in bed "because it is the least painful position" for him.  Tr. 249.  Plaintiff indicated his condition interferes with his ability to perform personal care such as dressing, bathing, and using the toilet.  Tr. 250.  At the hearing Plaintiff testified he experiences a "tremendous amount of pain" in his joints because the joints consistently go out of their sockets.  Tr. 46.  He is unable to stand longer than ten minutes "without excruciating pain."  Tr. 47.  Plaintiff testified he currently uses a cane, but he expects to eventually require a wheelchair to move around.  Tr. 47.  He also testified it is difficult for him to be seated for long periods and painful to get up from a chair because of his hip and knee pain.  Tr. 47. Plaintiff testified the progression in his knees, feet, ankles, hips, and hands has "drastically gotten worse."  Tr. 49.  He spends much of his day "bedridden," but he is consistently "uncomfortable" from having to move his joints to prevent "be[ing] stuck."  Tr. 50.

       The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms are

not entirely consistent with the medical evidence and other evidence in the record.  Tr. 28-29.  The ALJ also discounted Plaintiff's testimony based on his inconsistent statements regarding "matters relevant to the issue of disability." Tr. 31.  The ALJ noted Plaintiff testified his last job was in 2016 as a receptionist at a YMCA.  Tr. 31, 45, 226, 234.  The ALJ noted, however, in June 2017 Plaintiff told his treating provider during an annual examination that he had a new job as a delivery driver for a dispensary.  Tr. 340.  In addition, Plaintiff testified he was terminated from his job at the YMCA because he could not physically respond to emergencies as necessary.  Tr. 45.  The ALJ noted, however, at the prior disability hearing Plaintiff reported he was terminated "due to breaking the rules of conduct."  Tr. 31, 69.  Plaintiff did not dispute this issue.  The ALJ also provided additional reasons for discounting Plaintiff's testimony.  For example, the ALJ found Plaintiff's weight has remained stable and has not caused any additional decline in Plaintiff's overall functioning. Tr. 29.  The ALJ also noted evidence considered by the previous ALJ showed "significant joint problems on objective imaging including severe pes planus and malformed hips."  Although new imaging has led to new diagnoses regarding those conditions,

there is not any evidence of a significant worsening in
Plaintiff's condition.  Tr. 29.  The record reflects in July
2018 Plaintiff demonstrated increased activity tolerance during
physical-therapy exercises, improved active range of motion of
his right ankle, and improved bilateral lower-extremity
strength.  Tr. 30, 481.  In October 2018 Plaintiff reported he
was independent in his activities of daily living even though he
used a cane.  Tr. 547.  An examination in October 2018 also
showed Plaintiff had normal range of motion, normal muscle tone,
and power in his arms and legs.  Tr. 541, 545.  In March 2019
during a consultation with Thomas Huff, M.D., regarding possible
hip surgery, Plaintiff reported he was able to walk up to two
blocks before experiencing any symptoms.  Tr. 630.

 On this record the Court concludes the ALJ did not err
when he discounted Plaintiff's subjective symptom testimony
because the ALJ provided legally sufficient reasons supported by
substantial evidence in the record for doing so.

**IV.  The ALJ did not err when she discounted Dr. Meeker's
medical opinion.**

 Plaintiff contends the ALJ failed to provide clear and
convincing reasons for discounting Dr. Meeker's opinion.

 **A.  Standards**

 Because Plaintiff filed her application after

March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Med. Evid.*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). *See also Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). The new regulations provide the Commissioner "'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative finding(s)[.]'" *Id.*, at *2 (quoting 20 C.F.R. § 404.1520c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the Social Security Administration "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources. . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission

of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p, SSR 96-2P 2017,
WL 3928298, at *1 (S.S.A. Mar. 27, 2017).  In other words, the
Commissioner must consider all medical opinions and "evaluate
their persuasiveness" based on "supportability" and
"consistency" using the factors specified in the regulations.
20 C.F.R. § 404.1520c(c).  Those factors include
"supportability," "consistency," "relationship with the
claimant," "specialization," and "other factors."  *Id.*  The
factors of "supportability" and "consistency" are considered to
be "the most important factors" in the evaluation process.  *Id.*
*See also Linda F.*, 2020 WL 6544628, at *2.

In addition, the regulations change the way the
Commissioner should articulate his consideration of medical
opinions.

> First, we will articulate our consideration of
> medical opinions from all medical sources
> regardless of whether the medical source is an
> AMS [Acceptable Medical Source].  Second, we will
> always discuss the factors of supportability and
> consistency because those are the most important
> factors.  Generally, we are not required to
> articulate how we considered the other factors
> set forth in our rules.  However, when we find
> that two or more medical opinions . . . about the
> same issue are equally well-supported and
> consistent with the record but are not exactly
> the same, we will articulate how we considered
> the other most persuasive factors.  Third, we
> added guidance about when articulating our
> consideration of the other factors is required or

> discretionary.  Fourth, we will discuss how
> persuasive we find a medical opinion instead of
> giving a specific weight to it.  Finally, we
> will discuss how we consider all of a medical
> source's medical opinions together instead of
> individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

Although the regulations eliminate the "physician
hierarchy," deference to specific medical opinions, and
assigning "weight" to a medical opinion, the ALJ must still
"articulate how [the ALJ] considered the medical opinions" and
"how persuasive [the ALJ] find[s] all of the medical opinions."
20 C.F.R. § 404.1520c(a) and (b)(1).  The ALJ is required to
"explain how [the ALJ] considered the supportability and
consistency factors" for a medical opinion.  20 C.F.R.
§ 404.1520c(b)(2).  "At the least, this appears to necessitate
that an ALJ specifically account for the legitimate factors of
supportability and consistency in addressing the persuasiveness
of a medical opinion."  *Linda F.*, 2020 WL 6544628, at *2.
Finally, the Court must also "continue to consider whether the
ALJ's analysis has the support of substantial evidence."  *Id.*,
at *2 (citing 82 Fed. Reg. at 5852).

### B.  Analysis

Plaintiff was first seen on March 20, 2019, by
Dr. Meeker, a foot specialist.  Tr. 626-28.  At that time

Dr. Meeker noted Plaintiff was not in acute distress, had full weight bearing bilaterally, and used a cane due to antalgic gait. Tr. 627. On examination Dr. Meeker found cavus alignment was absent, but planovalgus foot alignment was present and severe. Tr. 627. He also noted Plaintiff had normal range of motion in his ankle, decreased range of motion subtalar, and full ankle motor ability bilaterally. Tr. 627-28. Dr. Meeker reviewed x-rays that showed severe planovalgus collapse and skew foot bilaterally. Tr. 628. He recommended reconstruction of both feet and the likely need for triple arthrodesis in order to alleviate bilateral foot pain. Tr. 628.

On August 30, 2019, Dr. Meeker completed a medical questionnaire regarding his opinion of Plaintiff's ability to do work-related activities. Tr. 638-43. He diagnosed Plaintiff with "acquired flat foot, bilateral." Tr. 639. He noted pain interfered with Plaintiff's ability to remain active and Plaintiff's planovalgus foot alignment is severe. Tr. 639. Dr. Meeker also noted it is reasonable to expect Plaintiff to experience substantial difficulty with stamina, pain, or fatigue if he worked full-time at a sedentary or light level of exertion, and he would likely need to work at a reduced work pace. Tr. 639. Dr. Meeker, however, noted Plaintiff's health

would not be made worse if he worked full-time at a light or sedentary level of exertion.  Tr. 640.  He noted Plaintiff needs to change positions more than once every two hours, can stand and walk for less than two hours in an eight-hour workday, and can sit for less than two hours in an eight-hour workday. Tr. 640-41.  He also noted Plaintiff's impairment would affect his walking to the extent that it would interfere with Plaintiff's ability to initiate, to sustain, or to complete normal activities of daily living independently.  Tr. 641. Dr. Meeker was "uncertain" about Plaintiff's need to alternate sitting, standing, or walking to relieve discomfort, but he noted Plaintiff could possibly need to lie down at unpredictable intervals during a work shift.  Tr. 641.  Dr. Meeker opined Plaintiff could "rarely" twist, stoop, crouch, climb stairs or ladders, or carry more than ten pounds.  Tr. 642.  He also opined Plaintiff would need crutches, a knee scooter, or a walker for work-related activities and would be absent from work four or more times per month due to his impairments.  Tr. 643.

The ALJ found Dr. Meeker's opinion unpersuasive on the grounds that the limitations Dr. Meeker reported are not supported by the medical records (including his own records,

which addressed only Plaintiff's foot condition); he did not

provide any explanation to support his opinions; and his

opinions are inconsistent with the opinions of state-agency

consultants who considered all of Plaintiff's medical conditions

when they assessed Plaintiff's functional limitations.  Tr. 33.

For example, the primary condition evaluated by Dr. Meeker was

Plaintiff's foot condition.  Tr. 639.  The ALJ concluded this

condition alone would not support Dr. Meeker's assessed

environmental limitations or limitations for sitting, twisting,

or stooping.  Tr. 33.  Even though Dr. Meeker found Plaintiff

had severe foot issues in March 2019, he indicated Plaintiff had

full motor strength in his ankle and did not have any

neuropathy.  Tr. 628.

On the other hand, the ALJ found the opinions of Peter

Bernardo, M.D., and Nathaniel Arcega, M.D., state-agency

consultants, to be persuasive on the grounds that their opinions

are consistent with Plaintiff's ongoing conservative treatment

and supported by the medical evidence that indicates Plaintiff's

condition has remained largely stable since the prior

adjudication.  Tr. 33.  For example, on July 23, 2018,

Dr. Bernardo considered Plaintiff's impairments of obesity,

TRPS, painful and unstable joints with frequent dislocation,

bilateral ankle degenerative joint disease, and hip

malformation.  Tr. 119.  Based on these conditions, Dr. Bernardo

adopted the previous ALJ's findings and opined Plaintiff can

only occasionally lift and carry up to 20 pounds and can

frequently carry ten pounds; can only stand and/or walk for a

total of two hours in an eight-hour workday; can only sit for a

total of approximately six hours in an eight-hour workday; must

periodically alternate sitting and standing to relieve pain; is

limited in his ability to push and/or pull bilaterally; must

have the option to change between standing and sitting positions

every 30 minutes; can only occasionally climb ramps or stairs,

stoop, or kneel; cannot climb ladders, ropes, and scaffolds; and

cannot crawl.  Tr. 117-19.  On November 17, 2018, Nathaniel

Arcega, M.D., issued an opinion consistent with Dr. Bernardo's

conclusions.  Tr. 133-36.

Under the new Regulations the ALJ is not required to

defer to any medical opinions based on the relationship between

the claimant and the medical source, and the ALJ is not required

to discuss that relationship unless the ALJ finds two or more

medical opinions about the same issue are equally supported and

consistent with the record even if they are not identical.  20
C.F.R. §§ 416.920c(a), 416.920c(b)(3).

The Court concludes on this record that the ALJ did
not err when she discounted Dr. Meeker's opinion because the ALJ
provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

**V.    The ALJ did not err in her assessment of Plaintiff's RFC.**

Plaintiff contends the ALJ failed to include in her
assessment of Plaintiff's RFC all of the medical findings
regarding Plaintiff's limitations.  Plaintiff asserts he is not
capable of working on a "regular and continuing basis" as a
result of his chronic pain, reduced persistence and pace, and
"grossly disturbed gait."  Plaintiff also contends the ALJ did
not allow for extra breaks or time off from work as a result of
his pain, weakness, fatigue, and significantly reduced ability
to ambulate effectively.

As noted, the Court has concluded the ALJ properly
discounted Dr. Meeker's opinion and Plaintiff's subjective
symptom testimony regarding his limitations.  Accordingly, the
Court concludes the ALJ provided legally sufficient reasons to

support her assessment of Plaintiff's RFC.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 6th day of July, 2021.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge